American Security Company v. Commissioner.
American Sec. Co. v. Commissioner
Docket No. 110386.
United States Tax Court
1943 Tax Ct. Memo LEXIS 233; 2 T.C.M. (CCH) 356; T.C.M. (RIA) 43308; June 25, 1943
*233 Verne McMillen, Esq., 1004 Pyramid Bldg., Little Rock, Ark., for the petitioner. Stanley B. Anderson, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The respondent determined deficiencies in income tax and excess profits tax for the years 1935, 1936, 1937, and 1938, as follows: Excess
Year
Income Tax
Profits Tax
1935
$ 7,791.80
$ 2,833.39
1936
25,829.50
10,411.26
1937
11,917.21
4,184.19
1938
4,691.70
1,383.54
$50,230.21
$18,812.38
The main question relates to determining the correct basis of properties which petitioner disposed of in the taxable years for the purpose of computing gain or loss in each taxable year. Findings of Fact Petitioner, an Arkansas corporation, was organized on June 5, 1935. It filed its income tax returns for the taxable years with the collector for the district of Arkansas. Immediately following the organization of petitioner, various properties were conveyed to it by the receiver of the American Building and Loan Association of Little Rock, Arkansas, under circumstances set forth hereinafter. Petitioner was organized for the purpose of acquiring such properties and for the purpose *234 of selling them over a period of years upon the installment basis. During the taxable years, petitioner disposed of some of the properties. Petitioner's outstanding stock consists of 1,000 shares of a par value of $100 each. In 1934, the American Building & Loan Association of Little Rock, Arkansas, became insolvent and Parker C. Ewan was appointed receiver by the Chancery Court of Pulaski County, Arkansas. The assets of the Association consisted of real estate and mortgages. In May 1935, Hogan Oliver, a member of the partnership of Oliver & Freeling, which was engaged in the brokerage business in Little Rock, approached H. L. Thomas, president of the Pyramid Life Insurance Company of Little Rock, and asked him whether Pyramid would be interested in joining in the purchase of the assets of the Association if satisfactory terms could be arranged. Thomas told Oliver that his company might be interested. Thomas then appraised the various assets of the Association and estimated that the sum of $450,000 could be realized upon liquidation of the assets if they were sold on the installment plan. Thereafter, it was agreed between Pyramid and Oliver & Freeling that an offer of $250,000 would *235 be made to the receiver for the assets. Pyramid agreed to advance $200,000 of the purchase price, and Oliver & Freeling agreed to advance $50,000. Verne McMillen, who was the general counsel of Pyramid was orally authorized by Pyramid and Oliver & Freeling to make an offer in his name, the trustee. McMillen sent the following letter to the receiver of the Association: May 18, 1935. I hereby offer you the sum of $250,000.00 for all of the assets of every kind and character, except cash and Home Owners' Loan Bonds and authorizations for bonds, of the American Building & Loan Association, of which you are receiver. I attach my check for $10,000.00 as a part of the purchase price for said assets and agree to pay the balance on or before June 30, 1935. This offer is made for the assets which are now in your hands as Receiver as of this date and is made with the understanding that you will continue to handle the property as Receiver until the payment of the balance of the purchase price. All moneys collected by you after this date are to be set aside and paid to me or credited on the balance due on the purchase price when it is paid. I agree to pay all salaries, traveling expenses, *236 and other necessary expenses of operation from this date up to the date of the final payment of the balance due on the purchase price. Upon acceptance of this offer and approval by the Court and final payment of the purchase price, it is agreed and understood that you are to make all necessary deeds, conveyances, assignments, and other proper instruments of conveyance necessary to transfer all assets to me or my order. Subsequently, and prior to June 11, 1935, the offer was accepted by the receiver and was approved by the Chancery Court of Pulaski County, Arkansas. Thereafter, and prior to June 11, 1935, it was agreed between Pyramid, Oliver & Freeling and McMillen that a corporation should be formed to take over the assets which McMillen was in the process of acquiring as the agent of Pyramid and Oliver and Freeling. It was agreed, prior to the organization of the proposed corporation, that the stock of the corporation, which was regarded as having no value, would be issued to eight individuals, as follows: H. L. Thomas
236 shares
R. C. Stark
236 shares
Verne McMillen
236 shares
Greely Watson
100 shares
Hogan Oliver
90 shares
Guy Freeling
90 shares
George F. Jackson
10 shares
S. M. Dent
2 shares
Total
1,000 shares
*237 The stock was issued to these individuals in consideration of services to be rendered by them to the corporation in the liquidation of the properties. It was also agreed that the corporation would issue 4 percent first mortgage bonds in the amount of $460,000, payable over a period of five years, and secured by the properties and assets to be received from the Association; that the bonds would be issued as follows: $360,000
to Pyramid
90,000
to Oliver & Freeling
10,000
to Greely Watson
$460,000 Greely Watson had assisted the receiver of the Association, and he was acquainted with the properties. It was contemplated that Watson would be engaged by petitioner to assist in the liquidation of the assets. Pursuant to the above understanding, petitioner was incorporated on June 5, 1935 by Greely Watson, Verne McMillen, and S. M. Dent, who received qualifying shares of stock in the amount of one share each. Immediately thereafter, McMillen arranged from the transfer of the properties to petitioner directly from the receiver of the Association, and the following steps were taken: (1) On June 8, 1935, McMillen, on behalf of Pyramid and Oliver & Freeling, made a written offer *238 to petitioner under which he offered to transfer their respective interests in the assets of the Association in exchange for 997 shares of petitioner's capital stock and $460,000 of petitioner's first mortgage bonds, the bonds to be secured by a deed of trust covering all of the property. At the first meeting of the stockholders of petitioner, which was held on June 10, 1935, the following resolution was adopted: Be It Resolved, That this Company does hereby accept the offer of Verne McMillen, as Trustee, as set out in his written offer (a copy of which is attached hereto and made a part of these minutes) for the sale, transfer and assignment to this company by the said Verne McMillen, as Trustee, of that certain contract of purchase heretofore entered into between the said Verne McMillen, as Trustee, as Purchaser, and Parker C. Ewan, as Receiver of American Building & Loan Association, of Little Rock, Arkansas, as Seller, for the purchase of certain assets and property of said Association (more particularly described in a detailed schedule of said assets and property attached to said written offer which is now made a part of these minutes) in exchange for 997 shares of the capital *239 stock of this Company and $460,000.00 of this Company's first mortgage bonds, payable to bearer, payment of which bonds is to be secured by this Company, conveying, assigning and pledging to Union National Bank of Little Rock, Little Rock, Arkansas, as Trustee for the holder or holders of said bonds, all of the property so acquired by this Company through the assignment to it of said contract of purchase. Be It Further Resolved, That the President and Secretary be and they are hereby authorized, empowered and directed to issue bonds in the name and behalf, and under the corporate seal of this Company, in the aggregate principal amount of $460,000.00, payable to bearer, and to issue certificates for stock for 997 shares of the capital stock of this Company to Verne McMillen, as Trustee, or order, said stock to be delivered to Verne McMillen, as Trustee or his order, and said bonds to be delivered to said Union National Bank of Little Rock, as Trustee; and the President and Secretary are further authorized, empowered and directed to execute in the name and behalf and under the corporate seal of this Company such deeds of trust, assignments of notes and mortgages and other instruments *240 of conveyance as may be required, conveying, assigning and pledging to said Union National Bank of Little Rock, as Trustee, all of the property acquired by this Company through said contract of purchase as security for the payment of said bonds. A similar resolution was adopted by petitioner's board of directors at a meeting held on the same day. (2) On June 11, 1935, $240,000, the balance of the purchase price, was paid by Pyramid and Oliver & Freeling to the Union National Bank of Little Rock, which in turn paid that amount over to the receiver of the Association. The receiver thereupon conveyed the assets of the Association directly to petitioner. On the same day, petitioner executed and delivered $460,000 of its bonds to the Union National Bank, which in turn, delivered $360,000 of the bonds to Pyramid, $90,000 of the bonds to Oliver and Freeling, and $10,000 of the bonds to Greely Watson. Also, certificates of stock were issued by petitioner to the following individuals: H. L. Thomas
236 shares
R. C. Stark
236 shares
Verne McMillen
235 shares
Greely Watson
99 shares
Hogan Oliver
90 shares
Guy Freeling
90 shares
George F. Jackson
10 shares
S. M. Dent
1 shares
Total
997 shares
*241 In June 1935, H. L. Thomas was president of Pyramid; R. C. Stark was secretary; Verne McMillen was vice-president and general counsel; and Dr. George F. Jackson was the medical director. The total number of shares of outstanding stock of Pyramid was 12,500 shares: Thomas owned 562.78 shares; McMillen, 198.75 shares; Stark, 155 shares; and Jackson, 90 shares, making a total of 1,006.53 shares. The balance of the outstanding shares was owned by other individuals. Neither Hogan Oliver, Guy Freeling, Greely Watson, or S. M. Dent were employees or stockholders of Pyramid. No cash consideration was paid by any of petitioner's stockholders for the stock issued to them by petitioner, but Hogan Oliver, Greely Watson, H. L. Thomas, R. C. Stark, and Verne McMillen performed services in the liquidation of the assets which were transferred to petitioner by the receiver for the Association. Only Greely Watson received a salary from petitioner, in addition to the stock which was issued to him. A large portion of the assets acquired by petitioner under the above transaction was disposed of, and all of the $460,000 bonds were paid or taken up through the issuance of other bonds by petitioner prior *242 to December 31, 1938. The stock of petitioner at the date of issuance had no value. The unadjusted basis of the assets acquired by petitioner under the above transaction is $460,000 for the purpose of determining gain or loss. Pyramid did not own any of petitioner's stock at any time. Opinion In this proceeding, in effect, respondent takes the view that Pyramid was the equitable owner of some of petitioner's stock immediately after the transfer of the assets of the Association to petitioner on June 11, 1935. This is premised upon the belief that all of the individuals to whom petitioner's stock was issued except Watson, Oliver, Freeling, and Dent, held petitioner's stock as donees of Pyramid. This being so, it is argued that Pyramid must have been at least momentarily in control of petitioner. Under this theory, respondent contends that petitioner received the properties in question in a non-taxable exchange under the provisions of section 112 (b) (5) of the Revenue Act of 1934; [1] and that, accordingly, the basis of the property for the purposes of computing gain or loss is to be determined under the provisions of section 113 (a) (8). [2] Under section 113 (a) (8), in general, *243 the basis of the property is the same in the hands of the transferee as it was in the hands of the transferor. It is respondent's contention that Pyramid and Oliver & Freeling transferred property to petitioner solely in exchange for stock or securities of petitioner, and that immediately after the exchange, Pyramid and Oliver & Freeling were in control of petitioner so that the basis of the property to petitioner is $250,000, under the provisions of section 113 (a) (8), which was the amount paid for the property by Pyramid and Oliver and Freeling. *244 In its return for the period beginning with its organization on June 5, and ending December 31, 1935, petitioner used the face amount of the bonds issued, plus the par value of its stock issued at the time of its organization, as its cost in determining gain or loss on the sale of that portion of the assets sold during that period. In a preliminary examination of that return, respondent held that the unadjusted basis of the assets to petitioner was $250,000, but permitted petitioner to amortize $210,000, (which was the difference between $250,000, which respondent held was the cost of the assets to petitioner, and $460,000, the total amount of bonds issued), over the life of the bonds, and to deduct such amortized amounts as the properties were sold and the bonds retired. Accordingly, petitioner claimed deductions for bond discount in its amended return for 1935, and in its returns for 1936, 1937, and 1938. In the notice of deficiency, respondent disallowed the bond discount, and held that pursuant to sections 112 (b) (5), and 113 (a) (8), the unadjusted basis of petitioner's assets was $250,000. Respondent added the amounts which had been deducted as bond discount to net income. *245 Petitioner denies that it acquired its assets under an exchange such as is covered by section 112 (b) (5) for the reason that Pyramid, under the transaction, did not receive any of petitioner's stock. Petitioner contends that Thomas, Stark, McMillen, and Jackson received its stock as individuals, separate and apart from the corporation, Pyramid. Under petitioner's construction of the facts, the basis of its assets is their cost to petitioner under the provisions of section 113 (a). Petitioner contends that the cost to it of the properties acquired in June 1935, was $460,000. Petitioner takes the view that the properties were acquired in exchange for its bonds and that none of its stock was issued in consideration for the properties. The question turns on the facts and it is necessary to discuss them briefly. Prior to entering into the contract with the receiver for the Association, Pyramid had appraised the assets of the Association and had determined that $450,000 could be realized ultimately from them, if they were sold on the installment plan. Based upon this appraisal, Pyramid and Oliver & Freeling, through their agent, McMillen, made an offer of $250,000 for the assets of *246 the Association. This offer was accepted by the receiver for the Association and approved by the court. A plan was then worked out by Pyramid, Oliver & Freeling and McMillen whereby a corporation would be formed to hold, manage and liquidate the assets which McMillen was in the process of acquiring, as the agent of Pyramid and Oliver & Freeling. Under the plan which was formed prior to petitioner's incorporation it was agreed that Pyramid and Oliver & Freeling would arrange for the transfer of the assets of the Association directly from the receiver for the Association to petitioner as a matter of convenience, that petitioner would receive the properties in exchange for $460,000 of its bonds, and that petitioner's stock, which was considered without value, would be issued directly to various individuals in return for their services to petitioner in the liquidation of the assets. Respondent admits on brief that petitioner's stock was of no value at the time of issuance. Pyramid's sole interest was to recover its advance of $200,000 out of the bonds. It would take a number of years to liquidate the properties, and it was thought expedient to organize petitioner for that purpose. Pyramid *247 believed that the individuals who received the stock would manage petitioner efficiently in the liquidation of the properties. The transaction was not a device to evade taxation, but was a bona fide business arrangement. . We are not unmindful of the fact that petitioner's resolution of June 10, 1935, authorized the issuance of 997 shares of its stock to "Verne McMillen, as Trustee, or order." However, the record establishes clearly that it was agreed by Pyramid, Oliver & Freeling, and McMillen, prior to petitioner's incorporation, that petitioner's stock would be issued to the eight individuals in return for their services to petitioner. The issuance of the bonds and their delivery to Pyramid, Oliver & Freeling, and Watson, the issuance of the stock to the eight individuals, the payment to the receiver of the Association, and the transfer of the assets to petitioner by the receiver were component steps of a single transaction carried out under a prearranged plan and must be viewed as a whole. As stated in : A single transaction carried *248 out in accordance with a preconceived plan cannot be split up into its component parts for tax purposes. The same rule is enunciated in ; ; ; and . Under the plan, it was agreed that petitioner's stock would be issued to certain individuals rather than to Pyramid. These individuals were not mere nominees of Pyramid but actual owners of the stock with all the attributes of ownership. The consideration for the issuance of the stock to them was their services to be rendered to the new corporation. However, even assuming that no services were to be rendered to petitioner by the stockholders, it has been held that the fact that distributees of stock under a prearranged plan were donees rather than purchasers of the stock is not controlling. The only way in which it can be considered that Pyramid *249 was in control of petitioner after the transfer of assets is to ascribe to it ownership of the shares of stock issued to certain individuals who were officers and stockholders of Pyramid. To do that, however, is to distort the wording of section 112(b) (5). It has been frequently held that where the language of a statute is plain and susceptible of but one meaning, there is no justification for resort to judicial construction. ; . It has also been held in , that the word "transferor" should not be construed to mean "transferor or its stockholders". In this connection, it is to be noted that the stockholders of Pyramid who were stockholders of petitioner owned only 8 percent of Pyramid's outstanding stock. Under circumstances, it cannot be held that Pyramid owned the stock of petitioner which was issued to Pyramid's stockholders and officers. To hold otherwise would be to disregard the rule established by the Supreme Court in , *250 where it was said: A corporation and its stockholders are generally to be treated as separate entitles. Only under exceptional circumstances - not present here - can the difference be disregarded. It cannot be said here that the circumstances are so exceptional that we should ascribe to Pyramid the stock of petitioner owned by Pyramid's stockholders. Respondent relies on ; affd., ; certiorari denied, ; and . These cases are not in point, however, since immediately after the exchange, stock in the new corporation was actually issued to the transferors and they were in control of the new corporation. In those cases, they subsequently transferred part of the stock to other parties. Here none of the stock was ever issued to Pyramid, and Pyramid was never in control of petitioner. Respondent's contention that the cost to petitioner of the properties acquired by it from the Association is the cost to Pyramid and Oliver & Freeling must be denied for an *251 additional reason. To come within the purview of section 112(b)(5) the amount of the stock and securities received by Pyramid and Oliver & Freeling from petitioner must be substantially in proportion to their interest in the property prior to the exchange. Even assuming, arguendo, that the ownership of petitioner's stock, even though it was held by certain individuals who were officers and stockholders of Pyramid, must be imputed to Pyramid, the "amount of the stock and securities received" by Pyramid and Oliver & Freeling was not substantially in proportion to their interest in the property prior to the exchange. Originally Pyramid owned 80 percent, and Oliver & Freeling 20 percent of the property transferred. Petitioner issued $460,000 of its bonds, of which Pyramid received $360,000, or 78 percent, and Oliver & Freeling, $90,000, or 19 percent. The balance of the bonds went to Watson as part consideration for his future services in liquidating the properties. If the ownership of the stock which was issued directly to Thomas, Stark, McMillen, and Jackson, who were stockholders of Pyramid, is imputed to Pyramid, Pyramid received 718 shares, or 71.8 percent of petitioner's stock, *252 and Oliver & Freeling received 180 shares, or 18 percent of the stock. The balance of the stock went to other individuals not connected with either Pyramid or Oliver & Freeling. Thus Pyramid and Oliver & Freeling did not receive stock and securities from petitioner substantially in proportion to their interest in the property prior to the exchange. See ; . It is therefore concluded that the transfer of the properties by Pyramid and Oliver & Freeling to petitioner did not come within the purview of section 112 (b) (5) of the Revenue Act of 1934, since the transferors were not in control of the transferee corporation immediately after the exchange within the definition of "control" under section 112 (h). [3] Also, the amount of petitioner's stock and securities received by the transferors was not substantially in proportion to their interest in the property prior to the exchange. *253 Since section 112(b) (5) is inapplicable, the basis of the property in the hands of petitioner is the cost of such property to petitioner. Section 113 (a) Revenue Act of 1934. In return for the property acquired, petitioner issued its promises to pay certain amounts in the form of bonds. The face amount of the bonds issued by petitioner for the property in question must be considered as the cost of the property, since it represented the sum which petitioner was obligated to pay therefor. . It is therefore held that the basis to petitioner of the assets acquired by it from the American Building and Loan Association for the purpose of determining gain or loss on subsequent sales is the sum of $460,000. In view of the holding made above, it is unnecessary to consider petitioner's alternative contentions. Petitioner concedes the correctness of other adjustments made by respondent in some of the taxable years. Accordingly, Decision will be entered under Rule 50. Footnotes
1. SEC. 112. RECOGNITION OF GAIN OR LOSS. * * * * *
(b) Exchanges Solely in Kind. - * * * * *
(5) Transfer to corporation controlled by transferor. - No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange. ↩
2. SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS. (a) Basis (Unadjusted) of Property. - The basis of property shall be the cost of such property; except that - * * * * *
(8) Property acquired by issuance of stock or as paid-in surplus. - If the property was acquired after December 31, 1920, by a corporation - (A) by the issuance of its stock or securities in connection with a transaction described in section 112(b)(5) (including also, cases where part of the consideration for the transfer of such property to the corporation was property or money, in addition to such stock or securities), or (B) as paid-in surplus or as a contribution to capital, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made.↩
3. SEC. 112. RECOGNITION OF GAIN OR LOSS. * * * * *
(h) Definition of Control. - As used in this section the term "control" means the ownership of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of the corporation.↩